Elyza P. Heraldez, Esq. (State Bar No. 293395)
HERALDEZ LAW PC
8280 Aspen Street, Suite 120
Rancho Cucamonga, CA 91730
Office: (909) 942-9992
Email: Elyza.Heraldez@Heraldezlaw.com

Attorneys for Plaintiff,
HEATHER COOMES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER COOMES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>PACIFIC CONSTRUCTION GROUP, a California corporation; PCG CONSTRUCTION, INC.; an Arizona corporation; NATHAN MUNN, an individual; and DOES 1-15, inclusive,<br><br>　　　　Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES:**<br><br>1. **RETALIATION IN VIOLATION OF LABOR CODE § 1102.5;**<br>2. **RETALIATION IN VIOLATION OF LABOR CODE § 98.6;**<br>3. **RETALIATION IN VIOLATION OF FEHA;**<br>4. **FAILURE TO PREVENT RETALIATION IN VIOLATION OF FEHA;**<br>5. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;**<br>6. **MISCLASSIFICATION;**<br>7. **FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF LABOR CODE §§ 510 AND 1194;**<br>8. **FAILURE TO TIMELY PAY EARNED WAGES DURING EMPLOYMENT IN VIOLATION OF LABOR CODE § 204;**<br>9. **FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE § 226;**<br>10. **FAILURE TO TIMELY PAY ALL WAGES UPON SEPARATION OF EMPLOYMENT IN VIOLATION** |

OF LABOR CODE §§ 201, 202 AND 203;

11. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.;**
12. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
13. **RETALIATION [29 U.S.C. § 215(a)(3)];**
14. **FAILURE TO PAY OVERTIME [29 U.S.C. §§ 207(a), 215(a)(3)];**
15. **VIOLATION OF THE NLRA [29 U.S.C. § 158(a)(1) & (3)];**
16. **SEX DISCRIMIATION IN VIOLATION OF TITLE VII;**
17. **VIOLATION OF THE FEDERAL TRADE COMMISSION ACT**

Plaintiff HEATHER COOMES ("Plaintiff"), an individual, hereby files this Complaint against Defendants PACIFIC CONSTRUCTION GROUP; a California corporation, PCG CONSTRUCTION, INC., a Arizona corporation; NATHAN MUNN, and individual, and DOES 1-15, inclusive. PLAINTIFF is informed and believes, and on the basis of that information and belief, alleges as follows:

## THE PARTIES

1. Defendant PACIFIC CONSTRUCTION GROUP is a California corporation that, at all relevant times, was authorized to do business within the State of California and is doing business in the state of California.

2. PCG CONSTRUCTION, INC., is a Arizona corporation that, at all relevant times, was authorized to do business within the State of Arizona and is doing business in the state of Arizona.

3. Defendant NATHAN MUNN ("Munn") is an individual currently residing in the state of California.

4. Plaintiff HEATHER COOMES ("Plaintiff") is an individual currently residing in the state of Arizona.

5. The true names and capacities of the Doe Defendants sued herein as DOES 1-

15, inclusive, are currently unknown to Plaintiff, who therefore sues each such Defendants by said fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

6.      Plaintiff is further informed and believes that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, joint employer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this Complaint. Plaintiff is further informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

7.      At all relevant times, Defendants were and are legally responsible for all unlawful conduct, policies, practices, acts and omissions complained of herein. Further, Defendants are responsible for each of the unlawful acts or omissions complained of herein under the doctrine of respondent superior. The conduct of Defendants' managers and supervisors was at all relevant times undertaken as employees of Defendants, acting within the scope of their employment or authority in all of the unlawful activities described herein.

## JURISDICTION AND VENUE

8.      This action arises under federal law, including the Fair Labor Standards Act ("FLSA"), the National Labor Relations Act ("NLRA"), and Title VII of the Civil Rights Act of 1964.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the claims arise under federal statutes and supplemental jurisdiction under 28 U.S.C. § 1367.

PLAINTIFF'S COMPLAINT FOR DAMAGES

10. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant conducts business within this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff has exhausted the applicable remedies available to her under the Title VII and the California Fair Employment and Housing Act by timely obtaining a right-to-sue letter, and any and all remedies under the NLRA.

## FACTUAL ALLEGATIONS

12. Defendants PACIFIC CONSTRUCTION GROUP and PCG CONSTRUCTION, INC (collectively "Defendant") are joint employers of Plaintiff and operate as a full-service general contractor specializing in ground-up industrial, office, retail and medical facilities in Southern California. The defendant's office is based in Irvine, California.

13. Plaintiff was hired by Defendant as a project accountant on or about October 2, 2018, and was eventually promoted to assistant controller prior to her termination.

14. Plaintiff was a skilled project accountant and an exceptional employee, without any poor performance reviews.

15. Plaintiff has worked as a construction accountant for over 20 years.

16. In or about April, 2022, Plaintiff and her family relocated to Chino Valley, Arizona.

17. Plaintiff continued working for Defendant as an employee for several months following her move to Chino Valley, Arizona.

18. In or about November 7, 2022, Defendant reclassified Plaintiff as an "independent contractor" to continue providing bookkeeping and monthly project accounting.

19. Notwithstanding Defendant's reclassification, Plaintiff continued to work for Defendant in the same capacity she did while classified as an employee.

20. Defendant provided all the tools and supplies that Plaintiff used to conduct

PLAINTIFF'S COMPLAINT FOR DAMAGES

her job duties. Plaintiff used Defendant's tools when conducting work for Defendant, including her company laptop, which was connected to Defendant's network and accounting software, two desk monitors, her cell phone used to communicate with Defendant's employees, a credit card used to purchase company equipment and pay Defendant's bills when needed.

21.    Plaintiff was working for Defendant in excess of forty (40) hours per week without receiving any overtime payments.  Defendant controlled Plaintiff's schedule, and the manner and method that Plaintiff conducted work in her position as assistant controller. In fact, Defendant provided Plaintiff with specific in-house training for the position.

22.    Defendant utilizes a cloud-based business management platform called "Ninety IO" to track productivity and task management. Throughout Plaintiff's employment, Munn would assign Plaintiff daily and weekly tasks on Ninety IO, and Plaintiff was required to report on her progress to Defendant once a week during her scheduled "accounting team meeting" with Munn. Plaintiff and Munn would go over all of her assigned tasks and discuss future goals with the other project accountant Scott Nuenfeldt ("Nuenfeldt") and the office manager Shelly Onaka ("Onaka").

23.    Throughout the work-day, Munn assign Plaintiff tasks on Microsoft Teams messages and in Outlook emails. Munn would frequently forward Plaintiff emails throughout the day and tell her to "handle it" for him. Munn would also send Plaintiff Microsoft Teams messages requesting that she complete various tasks for him, or to train Nunfeldt or Onaka on how to complete certain tasks.

24.    Munn was in constant communication with Plaintiff, and would follow up with her several times a day to discuss tasks that needed to be done or to answer Plaintiff's questions.

25.    Plaintiff was also responsible for unilaterally scheduling weekly budget meetings with Defendant's project managers to go over deadlines for project billings. Plaintiff was required to report on those to Munn and Trevor Kershaw ("Kershaw") separately; if the project was behind or if the project manager was not completing their

PLAINTIFF'S COMPLAINT FOR DAMAGES

assigned tasks, Plaintiff was required to keep Defendant up-to-date and report on it.

26.   Munn used Smartsheets to track project billings that Plaintiff sent to project managers, and he would establish deadlines for those bills. Defendant had weekly and monthly deadlines on the Smartsheets file. Accordingly, Plaintiff was responsible for meeting with Munn and reporting on the progress of the bills every week.

27.   Plaintiff was Defendant's primary point of contact for Defendant's accounting department – all of Defendant's accounting phone calls were routed to her company cell phone. If a subcontractor or client had a question on one of Defendant's project they would call Plaintiff. If a vendor had a question on an invoice or payment they would call Plaintiff. If one of Defendant's employees had a question about purchasing something with a company credit card, they would have to call Plaintiff.

28.   Plaintiff was responsible for the Defendant's bi-monthly payroll. Plaintiff also handled two separate inboxes for Defendant one for Accounts Payable and the main Accounting inbox. In summary, Plaintiff's day-to-day operations were exactly the same as prior to being reclassified by Defendants as an "independent contractor". In fact, Defendant's employees knew Plaintiff as the "assistant controller" and never knew Defendant classified her as an independent contractor.

29.   Defendant also determined Plaintiff's rate of pay throughout her employment.

30.   Following Plaintiff's move in November 2022, Defendant still required Plaintiff to conduct work in California. Plaintiff was required to attend Defendant's team building events, including employee luncheons. Plaintiff would often work from her home in California until about March 2023. Following that, Plaintiff would work from her mother's house in Palm Springs.

31.   In or about October 2023, Plaintiff initially raised the issue of being classified as an employee with Munn. Munn expressed that he would discuss the issue with Kershaw and Brennon O'Byrne    ("O'Byrne") regarding transitioning her from independent contractor to employee.

32.   From about October 2023 to about March 2023, Plaintiff continued to follow

PLAINTIFF'S COMPLAINT FOR DAMAGES

up with Munn regarding her classification as an independent contractor.

33.    In about March 2024, Plaintiff met with Munn, Kershaw, and O'Byrne regarding her classification as an independent contract. Plaintiff explained during the meeting that because of Defendant classifying her as an independent contractor, she was losing money, and not receiving overtime, vacation, paid time off, health insurance, and other benefits. Munn, Kershaw, and O'Byrne agreed with Plaintiff and confirmed that Defendant would reclassify Plaintiff as an employee.

34.    In or about April 2024, soon after Plaintiff's meeting, Munn began threatening to withhold Plaintiff's paycheck if she failed to meet certain project demands.

35.    Plaintiff began to feel extremely anxious and concerned regarding Munn's threats. Plaintiff's family relied on her income for support, and she could not afford to have her payment withheld.

36.    On or about Friday, April 26, 2024, Plaintiff reported Munn's conduct to O'Byrne, and continued to reiterate:

> …Also, that makes me feel uncomfortable and really reinforces the fact that I am not getting the same basic rights as other PCG Employees which is why I would like to change my employment status from Independent Contractor to Employee…

37.    Over the weekend, from about April 26 to April 27, 2024, Plaintiff began to conduct independent research into the rights of "independent contractors", and that is when she discovered that what Defendant was doing was actually illegal.

38.    On or about Monday, April 29, 2024, Plaintiff attempted to call Munn to report what she learned and requested to speak with him and Kershaw, and O'Byrne; however, he replied that they were too busy. Accordingly, Plaintiff sent them a detailed email reporting the illegal conduct and requested that Defendant correct their behavior.

39.    On or about May 2, 2024, Defendant terminated Plaintiff's employment.

///
///
///

PLAINTIFF'S COMPLAINT FOR DAMAGES

# FIRST CAUSE OF ACTION

## RETALIATION

### [Labor Code § 1102.5, *et seq.*]

40.   Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

41.   At all times herein mentioned, Labor Code § 1102.5 *et seq.* was in full force and effect and was binding on Defendants.

42.   Labor Code § 1102.5 prohibits an employer from retaliating against an employee for his or her disclosure of information related to, or refusal to participate in, unlawful acts or acts the employee reasonably considered to be unlawful.

43.   At all relevant times, Defendants employed Plaintiff.

44.   Plaintiff made disclosures, as described fully in the Complaint, including but not limited to, her reasonable belief that Defendants misclassified her as an independent contractor and failure to pay wages due, in violation of California law. These disclosures were made to persons with authority over Plaintiff, who had the authority to investigate, discover, or correct legal noncompliance, including her direct supervisor, and Defendants' Human Resources Department.

45.   Plaintiff had reasonable cause to believe that the information disclosed a violation of state and federal statutes, and that Plaintiff's participation and compliance in these activities would be unlawful.

46.   Defendants terminated Plaintiff.

47.   Plaintiff's protesting, refusing to participate in, and disclosing her reasonable belief that Defendants' conduct of protesting and reporting Defendants' unlawful conduct were substantial factors in Defendants' decision to terminate Plaintiff's employment.

48.   Plaintiff was harmed by Defendants' termination of her employment.

49.   As a proximate result of Defendants' willful, knowing, and intentional wrongful termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress,

PLAINTIFF'S COMPLAINT FOR DAMAGES

and mental and physical pain and anguish, all to her damage in a sum according to proof.

50.    The persons who committed the unlawful acts described herein were officers, directors, or managing agents of Defendants acting within the scope of their employment. Moreover, Defendants and their officers, directors, or managing agents aided, abetted, incited, compelled, or coerced the commission of these unlawful acts. The unlawful acts described herein were committed with oppression, fraud and/or malice. In light of Defendants' willful, knowing, and intentional acts against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## SECOND CAUSE OF ACTION

### RETALIATION

### [Labor Code § 98.6, *et seq.*]

51.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

52.    At all times herein mentioned, Labor Code § 98.6 *et seq*. was in full force and effect and was binding on Defendants.

53.    Labor Code § 98.6 protects employees who complain orally or in writing about unpaid wages, or for exercising (on behalf of oneself or other employees) any of the rights provided under the Labor Code or Orders of the Industrial Welfare Commission, including, but not limited to, the right to demand payment of wages due, proper characterization of employees, or the exercise of any other right protected by the Labor Code.

54.    Labor Code section 98.6, subdivision (b), provides "…If an employer engages in any action prohibited by this section within 90 days of the protected activity specified in this section, there shall be a rebuttable presumption in favor of the employee's claim."

55.    At all relevant times herein, Plaintiff was an employee of Defendant.

56.    Plaintiff made written and oral complaints regarding her rights under California law, the Labor Code and within the jurisdiction of the Labor Commissioner, to be properly characterized as an employee, paid for time worked, and paid for vacation and

sick time taken.

57.   Plaintiff exercised her rights, on behalf of herself and Defendants' other employees, to, including, but not limited to, protest Defendants' unlawful conduct, to be properly characterized as an employee, paid for time worked, and paid for vacation and sick time taken.

58.   As a direct result of Plaintiff's written and oral complaints, Defendants retaliated, discriminated, and ultimately terminated Plaintiff in response to her written and oral complaints regarding hers rights, and her co-workers' rights, under California law, the Labor Code and within the jurisdiction of the Labor Commissioner, to be paid for time worked, including, but not limited to be adequately paid for her time worked, to be properly characterized as an employee, and paid for vacation and sick time taken.

59.   As a result of Defendant's unlawful conduct, Plaintiff is entitled to collect a civil penalty in the amount of $10,000.

60.   As a proximate result of Defendant's willful, knowing, and intentional wrongful termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

61.   The persons who committed the unlawful acts described herein were officers, directors, or managing agents of Defendants acting within the scope of their employment. Moreover, Defendants and their officers, directors, or managing agents aided, abetted, incited, compelled, or coerced the commission of these unlawful acts. The unlawful acts described herein were committed with oppression, fraud and/or malice. In light of Defendants' willful, knowing, and intentional acts against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

62.   Due to Defendants' unlawful employment practices, Plaintiff has incurred and continues to incur legal expenses and attorneys' fees all to her damage in a sum according to proof. Plaintiff is entitled to an award of all attorneys' fees and costs incurred in this case. Pursuant to Labor Code § 218.5, subsection (a), "…In any action brought for the

PLAINTIFF'S COMPLAINT FOR DAMAGES

nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith."

### THIRD CAUSE OF ACTION

### RETALIATION

### [Gov. Code § 12940 (h)]

63.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

64.    At all times herein mentioned, Gov. Code § 12940 *et seq*. was in full force and effect and was binding on Defendants.

65.    Under the Fair Employment and Housing Act ("FEHA"), Government Code section 12900 *et seq*. it is an unlawful employment practice for any person to retaliate against an employee who opposes a practice forbidden by FEHA or asserts rights under FEHA. It is unlawful under FEHA for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under FEHA, or to attempt to do so.

66.    Under FEHA it is a protected activity to oppose practices forbidden by FEHA, assert rights pursuant to FEHA; complain about unlawful discrimination, harassment and retaliation, and/or complain about conduct that constituted unlawful discrimination, harassment or retaliation, to be associated with employees based on protected classes, to report unlawful discrimination, harassment and/or retaliation towards others and/or to report a hostile work environment directed at oneself or others.

67.    Under FEHA it is a protected activity to provide testimony and/or participate in a FEHA investigation and/or lawsuit and it is unlawful for an employer to take adverse action based on said testimony, involvement and or participation.

68.    The FEHA provides employees with a right to work in an environment free

from unlawful discrimination, harassment and retaliation.

69.    Plaintiff complained to Defendants about unlawful retaliation, which was in violation of the FEHA.

70.    Plaintiff opposed, reported, and refused to participate in activity forbidden under FEHA, including activit(ies) aimed at protecting employees right to be compensated for time worked, the right to demand payment of wages due, the right to express opinions about, support or oppose an alternative workweek election, or the exercise of any other right protected by the Labor Code, without being retaliated against, as alleged herein.

71.    Defendants subjected Plaintiff to adverse employment actions and ultimately terminated her for opposing, reporting, and refusing to participate in the unlawful conduct alleged herein.

72.    Plaintiff opposing, reporting, and refusing to participate in the unlawful conduct alleged herein was a substantial motivating reason for Defendants' adverse employment actions and ultimate termination of Plaintiff's employment.

73.    As a proximate result of Defendants' willful, knowing, and intentional wrongful termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

74.    The persons who committed the unlawful acts described herein were officers, directors, or managing agents of Defendants acting within the scope of their employment. Moreover, Defendants and their officers, directors, or managing agents aided, abetted, incited, compelled, or coerced the commission of these unlawful acts. The unlawful acts described herein were committed with oppression, fraud and/or malice. In light of Defendants' willful, knowing, and intentional acts against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

75.    Due to Defendants' unlawful conduct, Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, all to her damage in a sum according to proof.

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### FAILURE TO PREVENT RETALIATION

### [Gov. Code § 12940 (h)]

76.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

77.    At all times herein mentioned, Government Code § 12900 *et seq*. was in full force and effect and was binding on Defendants.

78.    Under the FEHA, Government Code § 12900 *et seq*. it is an unlawful employment practice for any person to retaliate against an employee who opposes a practice forbidden by FEHA or asserts rights under FEHA. It is unlawful under FEHA for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under FEHA, or to attempt to do so.

79.    At all times herein mentioned, Government Code § 12940(k) was in full force and effect and was binding on Defendants. This section makes it an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent retaliation from occurring.

80.    Notwithstanding notice of its obligation to prevent and remedy retaliation and discrimination, Defendants failed to take adequate steps to do so. For example, Defendants failed to implement appropriate policies and procedures, failed adequately to train directors and managers, failed to prevent continuing unlawful behavior, and failed to prevent or remedy its retaliation. In addition, Defendants were on actual or constructive notice of the existence of retaliation but failed to take reasonable steps to prevent or remedy the unlawful behavior.

81.    As a proximate result of Defendants' willful, knowing, and intentional failures to prevent and remedy unlawful behavior, Plaintiff has sustained economic losses, humiliation, emotional distress, and mental and physical pain and anguish in an amount subject to proof.

82.    On information and belief, the persons who committed the unlawful acts

described herein were officers, directors, or managing agents of Defendants acting within the scope of their employment. Moreover, Defendants aided, abetted, incited, compelled, and/or coerced the commission of this discrimination. The unlawful acts described herein were committed with oppression, fraud and/or malice and were authorized, ratified, or both by such officers, directors, or managing agents. In light of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff seeks an award of punitive damages in an amount according to proof.

83.    Due to Defendants' failure to prevent retaliation, Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, all to her damage in a sum according to proof.

## FIFTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

84.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

85.    At all times herein mentioned, Government Code § 12900 *et seq*. was in full force and effect and was binding on Defendants. Among other things, the FEHA required Defendants to refrain from discharging or in any manner retaliating against any employee for opposing unlawful business practices. "Fundamental public policy prohibits the retaliatory discharge of employees for whistle blowing in the public interest" (*Colores*, 105 Cal.App.4th at p. 1300, fn. 1, 130 Cal.Rptr.2d 347.)

86.    Defendants terminated Plaintiff for opposing their unlawful business practices of not compensating employees for time worked, not properly characterizing employees as employees, not paying employees for time worked, not providing paid vacation and sick time to employees, and retaliating against employees for advocating for their rights.

87.    In terminating Plaintiff for these reasons and under the circumstances alleged herein, Defendants violated the fundamental public policies embodied in the above-referenced laws and regulations.

88.    As a proximate result of Defendants' willful, knowing, and intentional

wrongful termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

89.    The persons who committed the unlawful acts described herein were officers, directors, or managing agents of Defendants acting within the scope of their employment. Moreover, Defendants and their officers, directors, or managing agents aided, abetted, incited, compelled, or coerced the commission of these unlawful acts. The unlawful acts described herein were committed with oppression, fraud and/or malice. In light of Defendants' willful, knowing, and intentional acts against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## SIXTH CAUSE OF ACTION

## MISCLASSIFICATION

90.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

91.    During her employment with Defendants, Defendants have misclassified Plaintiff as an independent contractor.

92.    At all relevant times, Plaintiff has been entitled to the protections of the California Labor Code, including California Labor Code §§ 204, 510, and Industrial Welfare Commission Order No. 7-2001. These protections include the rights to be timely paid all wages earned at the legally required rates for all hours worked.

93.    California Labor Code § 510(a) requires employers to compensate employees at one and one-half times their regular rates of pay for:

    a.  All hours worked in excess of eight hours in one workday;

    b.  All hours worked in excess of forty hours in one workweek; and,

    c.  The first eight hours worked on a seventh consecutive workday during a workweek.

94.    California Labor Code § 510(a) also requires employers to compensate non-exempt employees at two times their regular rates of pay for:

PLAINTIFF'S COMPLAINT FOR DAMAGES

    a.  All hours worked in excess of twelve hours in one day; and,

    b.  All hours worked in excess of eight hours on a seventh consecutive workday during a workweek.

95.  During the applicable limitations period, Plaintiff has worked more than eight hours in one workday, more than forty hours in one workweek, and eight or more hours on a seventh consecutive workday without being paid for all of those hours at the rates required under California Labor Code § 510(a).

96.  As a result of Defendants' conduct, Plaintiff seeks declaratory relief regarding Defendants' misclassification of Plaintiff as an exempt employee.

## SEVENTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES

### [Cal. Labor Code §§ 510 and 1194]

97.  Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

98.  At all times relevant to this Complaint, Plaintiff was misclassified as an independent contractor of Defendants.

99.  Pursuant to Labor Code sections 510 and 1194 and the Wage Order 5, hourly non-exempt employees are entitled to receive a higher rate of pay for all hours worked in excess of eight (8) hours in a workday, forty (40) hours in a workweek, and on the seventh day of work in a workweek.

100.  Labor Code section 510, subdivision (a), states in relevant part: eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less man one and one-half times the regular rate of pay for an employee, Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay

of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

101.    Further, Labor Code section 1198 provides: the maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

102.    Despite California law requiring employers to pay employees a higher rate of pay for all hours worked more than eight (8) hours in a workday, more than forty (40) hours in a workweek, and on the seventh day of work in a workweek. Defendants failed to pay all overtime wages to Plaintiff for overtime hours worked.

103.    Specifically, Defendants' employed policies, practices, and/or procedures including, but not limited to, requiring Plaintiff to work over eight (8) hours in a day, work more than forty (40) hours in a workweek, and work more than seven consecutive days.

104.    Defendants failed to pay Plaintiff an overtime rate of pay for all the overtime hours she worked.

105.    As a result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount subject to proof, to the extent that they were not paid at their overtime rate of pay for all hours worked which constitute overtime.

106.    Pursuant to Labor Code section 1194, Plaintiff, is entitled to recover the full amount of her unpaid overtime wages, prejudgment interest, and attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY EARNED WAGES DURING EMPLOYMENT

### [Cal. Labor Code § 204]

107.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

108.    Plaintiff has been employed by Defendants in the State of California. In

California, wages must be paid at least twice during each calendar month on days designated in advance by the employer as regular paydays, subject to some exceptions. Labor Code §204(a). Wages earned between the 1st and 15th days, inclusive, of any calendar month must be paid between the 16th and the 26th day of that month and wages earned between the 16th and the last day, inclusive, of any calendar month must be paid between the 1st and 10th day of the following month. Id. Other payroll periods such as those that are weekly, biweekly, or semimonthly, must be paid within seven (7) calendar days following me close of the payroll period in which wages were earned. Labor Code §204(d).

109.   As a derivative of Plaintiff's claims above, Defendants failed to timely pay Plaintiff's earned wages (including overtime wages), in violation of Labor Code section 204.

110.   Defendants' aforementioned policies, practices, and/or procedures resulted in their failure to pay Plaintiff her earned wages within the applicable time frames outlined in Labor Code section 204.

111.   Defendants' failure to timely pay Plaintiff her earned wages in accordance with Labor Code section 204 was willful. Defendants had the ability to timely pay all wages earned by their employees in accordance with Labor Code section 204, but intentionally adopted policies or practices incompatible with the requirements of Labor Code section 204. When Defendants failed to timely pay Plaintiff all earned wages, they knew what they were doing and intended to do what they did.

112.   As a result of Defendants' unlawful conduct, Plaintiff has suffered damages in an amount subject to proof, to the extent that she was not timely paid their earned wages pursuant to Labor Code section 204.

113.   Pursuant to Labor Code section 210 Plaintiff is entitled to recover civil penalties as follows: (1) for any initial violation, one hundred dollars ($100); and (2) for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200), plus twenty-five (25%) percent of the amount unlawfully withheld.

### NINTH CAUSE OF ACTION

**FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS**

**[Cal. Labor Code § 226]**

114.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

115.    Pursuant to Labor Code section 226, subdivision (a), Plaintiff was entitled to receive, semimonthly or at the time of each payment of wages, an itemized wage statement accurately stating the following: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

116.    Defendants committed direct violations of Labor Code section 226, through their policies, practices, and/or procedures, including, but not limited to failing to provide Plaintiff with accurate itemized wage statements. Defendants failed to provide accurate wage and hour statements to Plaintiff who was subject to Defendants' control, was misclassified, and who did not receive all her earned wages (including overtime wages), in violation of Labor Code section 226.

117.    Defendants provided Plaintiff with itemized statements which stated inaccurate information including, but not limited to, the number of hours worked, the gross wages earned, and the net wages earned.

118.    Defendants' failure to provide Plaintiff with accurate wage statements was

knowing and intentional. Defendants had the ability to provide Plaintiff with accurate wage statements but intentionally provided wage statements they knew were not accurate. Defendants knowingly and intentionally put in place practices which deprived employees of wages and resulted in Defendants knowingly and intentionally providing inaccurate wage statements. These practices included Defendants' failure to include all hours worked and all wages due.

119. As a result of Defendants' unlawful conduct, Plaintiff has suffered injury. The absence of accurate information on her wage statements has prevented earlier challenges to Defendants' unlawful pay practices, will require discovery and mathematical computations to determine the amount of wages owed, and will cause difficulty and expense in attempting to reconstruct time and pay records. Defendants' conduct led to the submission of inaccurate information about wages and amounts deducted from wages to state and federal government agencies. As a result, Plaintiff is required to participate in this lawsuit and create more difficulty and expense for Plaintiff from having to reconstruct time and pay records than if Defendants had complied with their legal obligations.

120. Pursuant to Labor Code section 226(e), Plaintiff is entitled to recover fifty (50) for the initial pay period in which a section 226 violation occurred and one hundred dollars per violation for each subsequent pay period, not to exceed an aggregate penalty of four thousand (4,000) dollars.

121. Pursuant to Labor Code sections 226(e), Plaintiff is entitled to recover the full amount of penalties due under Section 226(e), reasonable attorneys' fees, and costs of suit.

## TENTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY ALL WAGES UPON SEPARATION OF EMPLOYMENT

### [Cal. Labor Code §§ 201, 202, and 203]

122. Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

123. At all times relevant to this Complaint, Plaintiff was misclassified as an

PLAINTIFF'S COMPLAINT FOR DAMAGES

exempt employee of Defendants.

124.   An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination or within seventy-two (72) hours of resignation. Labor Code §§201, 202. If an employee gave seventy-two (72) hours previous notice, they were entitled to payment of all wages earned and unpaid at the time of resignation. *Id.*

125.   Defendants failed to pay Plaintiff all wages earned and unpaid prior to separation of employment, in accordance with either Labor Code section 201 or 202.

126.   Defendants' failure to pay Plaintiff all wages earned prior to separation of employment timely in accordance with Labor Code sections 201 and 202 was willful. Defendants had the ability to pay all wages earned by hourly workers prior to separation of employment in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202. Defendants' practices include failing to pay for all time worked and overtime wages for all overtime hours worked. When Defendants failed to pay Plaintiff upon separation of employment, they knew what they were doing and intended to do what they did.

127.   Pursuant to either Labor Code section 201 or 202, Plaintiff is entitled to all wages earned prior to separation of employment that Defendants have yet to pay her.

128.   Pursuant to Labor Code section 203, Plaintiff is entitled to continuation of her wages, from the day they're earned and unpaid wages were due until paid, up to a maximum of thirty (30) days.

129.   As a result of Defendants' conduct, Plaintiff has suffered damages in an amount, subject to proof, to the extent they were not paid for all wages earned prior to separation.

130.   As a result of Defendants' conduct, Plaintiff has suffered damages in an amount, subject to proof, to the extent they were not paid all continuation wages owed under Labor Code section 203.

PLAINTIFF'S COMPLAINT FOR DAMAGES

## ELEVENTH CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

131.   Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

132.   The unlawful conduct of Defendants alleged herein constitutes unfair competition within the meaning of Business and Professions Code section 17200. This unfair conduct includes Defendants' use of policies, practices, and/or procedures which resulted in: failure to pay overtime wages for all overtime hours worked; failure to timely pay wages; failure to provide accurate wage and hour statements; and failure to timely pay all wages due upon separation of employment. Due to their unfair and unlawful business practices in violation of the Labor Code, Defendants have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their obligations to pay minimum wages for all hours worked; pay overtime wages for all overtime hours worked; timely pay wages; provide accurate wage and hour statements; and timely pay all wages due upon separation of employment.

133.   As a result of Defendants' unfair competition as alleged herein, Plaintiff has suffered injury in fact and lost money or property, as described in more detail above.

134.   Pursuant to Business and Professions Code section 17203, Plaintiff is entitled to restitution of all wages and other monies rightfully belonging to her that Defendants failed to pay and wrongfully retained by means of their unlawful and unfair business practices.

## TWELFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Nathan Munn)

135.   Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

136.    Defendant Munn's intentional conduct, as set forth herein, was extreme and outrageous.

137.    Defendant intended to cause Plaintiff to suffer extreme emotional distress. Plaintiff did suffer extreme emotional distress.

138.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate these damages.

139.    As a further direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, mental and physical pain, and anguish, all to her damage in a sum to be established according to proof.

## THIRTEENTH CAUSE OF ACTION

### RETALIATION

### [29 U.S.C. § 215(a)(3)]

140.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

141.    The provision of the FLSA which prohibits retaliation against employees who raise wage-related concerns states that it shall be unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint ...." (29 U.S.C. § 215(a)(3).)

142.    The 'complaint' necessary to trigger the protections of 29 U.S.C. § 215(a)(3) does not have to be a written complaint; rather, verbal complaints are sufficient. (*Kasten v. Saint Gobain Performance Plastics Corporation* (2011) 131 S.Ct. 1325.)

143.    Further, internal complaints to supervisors, as opposed to complaints to governmental agencies, are also sufficient to trigger the protections under 29 U.S.C. § 215 (a)(3); *Lambert v. Ackerley* (9th Cir. 1999) 180 F.3d 997, 1004.

144.    As alleged herein, Plaintiff raised several verbal and written complaints regarding her misclassification as an independent contractor, Defendant's continued failure

to properly pay wages and benefits, and to afford Plaintiff the basic protections and rights as other employees.

145.    Defendant then retaliated against Plaintiff by including, but not limited to, threatening to withhold her paycheck and terminating her employment as alleged herein.

146.    As a proximate result of Defendant's willful, knowing, and intentional wrongful termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

147.    In addition to lost wages, Defendant owes Plaintiff liquidated damages pursuant to 29 U.S.C. §216(b) in an amount equal to all the lost wages. Additionally, Plaintiff is entitled to recover interest and her attorney's fees, costs, and expenses.

## FOURTEENTH CAUSE OF ACTION

### FAILURE TO PAY OVERTIME

### [29 U.S.C. §§ 207(a), 215(a)(3)]

148.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

149.    Defendant is engaged in commerce and the production of commerce within the meaning of the FLSA. (See 29 U.S.C. § 207(a)(1).)

150.    Plaintiff, as a misclassified employee, is entitled to overtime wages at 1.5 times their regular rate of pay. (29 U.S.C. § 207(a)(2).)

151.    Plaintiff has, during the applicable statutory time periods, performed work for which she has not been compensated as required under the FLSA.  Plaintiff worked overtime hours within three years of filing this Complaint, including, but not limited to, working in excess of 40 hours per week.

152.    Defendant's failure to compensate Plaintiff at 1.5 times the Plaintiff's regular rate for such excess hours is a violation of Section 7 of the FLSA.

153.    Defendant knew that Plaintiff should have been paid 1.5 times her regular rate, but purposefully failed and/or refused to include her, even though it had actual knowledge

PLAINTIFF'S COMPLAINT FOR DAMAGES

of its obligation based on repeated reports and complaints from Plaintiff that Defendant's conduct was unlawful.

154.    Defendant's failure and/or refusal to pay Plaintiff for overtime at the correct rates is an ongoing violation of the FLSA. Defendant will continue to violate the FLSA unless enjoined and restrained by the Court. Plaintiff requests injunctive relief to remedy Defendant's continuing unlawful conduct.

155.    Defendant is entitled to recover the overtime wages that Defendant intentionally avoided paying. Defendant's willful violation also entitles Plaintiffs to liquidated damages under the FLSA and three years' worth of back-owed overtime wages. Additionally, Plaintiff is entitled to recover interest and her attorney's fees, costs, and expenses.

## FIFTEENTH CAUSE OF ACTION
## VIOLATION OF THE NLRA
### [29 U.S.C. § 158(a)(1) & (3)]

156.    Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

157.    The NLRA protects employees' rights to engage in "concerted activity," which includes discussing wages, working conditions, and other terms of employment with coworkers or supervisors. (*N.L.R.B. v. Brookshire Grocery Co.* (5th Cir.1990) 919 F.2d 359, 362, citation omitted.) Specifically, the NLRA, 29 U.S.C. § 158(a)(1), prohibits employers from interfering with, restraining, or coercing employees in the exercise of their rights under Section 7 of the NLRA, including the right to discuss wages and working conditions. 29 U.S.C. § 158(a)(1) of the NLRA, in turn, makes it an Unfair Labor Practice for employers "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in" Section 7.

158.    "[The NLRA] fundamentally seeks to protect workers' freedom of association in attaining improved wages and working conditions." (*YMCA of the Pikes Peak Region, Inc. v. N.L.R.B.* (10th Cir.1990) 914 F.2d 1442, 1455.) "The right of employees to engage

PLAINTIFF'S COMPLAINT FOR DAMAGES

in concerted activities ... with respect to wages is a fundamental [statutory] right guaranteed employees under the [NLRA]. If this right is to be a meaningful one employees must have the right to discuss wages as such discussion is essential." (*Wilson Trophy Co.* (1992) 307 NLRB 509, 511, 1992 WL 107415, enforced, *Wilson Trophy Co. v. N.L.R.B., supra,* 989 F.2d 1502.)

159.   As alleged herein, Plaintiff made several reports to various supervisors and human resource representatives to report the misclassification of not only herself, but other co-workers, as independent contractors, and the corresponding wage, benefit, and protection deficits as a result of Defendant's unlawful conduct.

160.   As a direct and proximate result of Plaintiff's reports, Defendant took adverse actions against Plaintiff, including, but not limited to, threatening to withhold her paycheck and terminating her employment.

161.   As a proximate result of Defendant's willful, knowing, and intentional wrongful conduct and termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

## SIXTEENTH CAUSE OF ACTION

### SEX DISCRIMINATION

### [Title VII of Civil Rights Act]

162.   Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

163.   Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on sex.

164.   Defendants have engaged in unlawful practices of sex discrimination in violation Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a) by subjecting Plaintiff to sex discrimination in the form of unequal pay, unequal benefits, misclassification, and termination of employment. Plaintiff was treated less favorably than similarly situated male

PLAINTIFF'S COMPLAINT FOR DAMAGES

employees in the terms and conditions of her employment, as alleged above.

165. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff received a Notice of Right to Sue from the EEOC, and this action is filed within 90 days of receipt of that notice.

166. As a proximate result of Defendant's willful, knowing, and intentional wrongful conduct and termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, attorneys fees and costs, all to her damage in a sum according to proof.

167. Defendant's unlawful conduct alleged herein were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

## SEVENTEENTH CAUSE OF ACTION

## VIOLATION OF THE FEDERAL TRADE COMMISSION ACT

168. Plaintiff incorporates herein by reference each and every allegation in this complaint as though fully set forth herein.

169. The FTCA, specifically Section 5(a)(1), prohibits unfair or deceptive acts or practices in or affecting commerce (*Federal Trade Commission v. Life Management Services of Orange County, LLC* (2018) 350 F.Supp.3d 1246.)

170. Under the FTCA, a practice is considered deceptive if it involves a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances, and the representation is material (*Federal Trade Commission v. Roca Labs, Inc.* (2018) 345 F.Supp.3d 1375). Intent to deceive is not required to establish a deceptive practice (*F.T.C. v. NHS Systems, Inc.* (2013) 936 F.Supp.2d 520.)

171. Defendant intentionally misclassified Plaintiff as an independent contractor rather than an employee, engaging in deceptive practices by misleading Plaintiff and other employees of their employment status and the associated rights and benefits. Defendant's misclassification of employees as independent contractors, mislead the Plaintiff (and potentially other employees) about their employment status, which is a material aspect of

PLAINTIFF'S COMPLAINT FOR DAMAGES

their relationship with Defendant. This misclassification lead Plaintiff and other employees receiving benefits and protections they are entitled to under the law, such as overtime pay, health benefits, and tax withholdings. Defendant's misclassification effected Plaintiff's decisions and conduct regarding her employment, and directly impacted her financial situation, benefits, and legal rights.

172.    As a proximate result of Defendant's willful, knowing, and intentional wrongful conduct and termination of Plaintiff, she has sustained and continues to sustain substantial losses in earnings, losses in other employment benefits, humiliation, emotional distress, and mental and physical pain and anguish, attorneys fees and costs, all to her damage in a sum according to proof. Plaintiff is entitled to appropriate relief, including injunctive relief to prevent further misclassification, restitution for all financial losses suffered due to the misclassification, and any other remedies available under the FTCA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an award against Defendant as follows:

1.    For special damages;

2.    For general damages including, without limitation, for physical harm and mental and emotional distress according to proof;

3.    For liquidated damages under 29 U.S.C. § 216(b);

4.    For declaratory relief;

5.    For civil penalties;

6.    For punitive damages;

7.    For an award of interest, including prejudgment interest, at the legal rate;

8.    For an award of attorneys' fees;

9.    For costs of suit incurred; and

10.    For such other and further relief that the Court deems just and proper.

///

///

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

11.    Plaintiff hereby requests a jury trial on all issue raised in this Complaint.

Dated:  March 26, 2025                                HERALDEZ LAW PC


By _____
    Elyza P. Heraldez, Esq.

    Attorneys for Plaintiff
    HEATHER COOMES

29

PLAINTIFF'S COMPLAINT FOR DAMAGES